# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTIANA MALL, LLC, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION No. 14-3984 |
| : | |
| DAVID M. SHAFKOWITZ, ET AL., : | |
|     Defendants. : | |

## MEMORANDUM OPINION

Tucker, C.J.                                                                                           June 25, 2015

      Presently before the Court is Defendants David M. Shafkowitz, Esquire and Law Offices of David M. Shafkowitz's Motion for Summary Judgment (Doc. 8), Plaintiff Christiana Mall, LLC's Response in Opposition thereto (Doc. 9), Defendants' Response to Plaintiff's Counter-Statement of Material Facts (Doc. 12), and Defendants David M. Shafkowitz, Esquire and Law Offices of David M. Shafkowitz's Reply Brief in Support of Defendants' Motion for Summary Judgment (Doc. 13). Upon careful consideration of the parties' briefs, exhibits, and all other papers herein, and for the reasons set forth below, this Court will ***grant*** Defendants' Motion for Summary Judgment.

## FACTUAL BACKGROUND

      Plaintiff Christiana Mall, LLC (the "Mall") brings this action against Defendants David M. Shafkowitz, Esq. and Law Offices of David M. Shafkowitz ("Law Offices"). Plaintiff is the owner of Christiana Mall, a mall located in Newark, Delaware. On December 21, 2011, the Mall entered into a binding lease agreement with tenant MRF Atlantic, LLC a/k/a Mr. Fruz LLC d/b/a Yogen Fruz ("MRF") to operate a yogurt business at the Mall. Pursuant to Articles 14 and 20 of

the lease agreement, MRF agreed to indemnify and defend the Mall in connection with any liens asserted against the property. See Pl.'s Resp. in Opp'n at Ex. 1.

MRF entered into a construction agreement with an outside contractor, Emory Hill and Company ("Emory"), for work to be performed at the Yogen Fruz store located at the mall. On October 21, 2012, Emory commenced a lawsuit in Delaware state court asserting, *inter alia*, a mechanic's lien in the amount of $187,984.84 against MRF for the nonpayment of labor and materials in connection with the construction of Yogen Fruz. Emory also asserted a mechanics lien claim against the Mall as the owner of the premises leased by MRF. An employee at MRF, Michael Geonnotti, hired Defendants to resolve the Emory lawsuit.[1]

The managing agent of the Mall is General Growth Properties ("GGP"). GGP's manager is Frank Francone. On November 9, 2012, after Emory had served its complaint on the Mall, Mr. Francone sent MRF a letter demanding that MRF defend and indemnify the Mall pursuant to the terms of the lease agreement. On behalf of MRF, Mr. Geonnotti signed the defense and indemnification letter in November 2012, forwarded it to Mr. Shafkowitz for review, and returned it to Mr. Francone. Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 50. During this time, Mr. Francone exchanged e-mails with Mr. Shafkowitz about the return of the executed defense and indemnification letter. See Pl.'s Resp. in Opp'n at Ex. 5. Specifically, on November 15, 2012, Mr. Francone sent an e-mail to Mr. Shafkowitz stating as follows:

> Hello Dave,
>
> Please send the signed Tender letter via e-mail and also, please make sure that the original is in the UPS bin today for tomorrow delivery.

---

[1] Mr. Shafkowitz avers that he is a sole proprietor and the "Law Offices of David M. Shafkowitz" is not a legal entity. See Defs.' Answer ¶ 5.

> The response date is fast approaching and I need to make sure we do not need to hire local counsel to represent GGP and the Property.

Id. Mr. Shafkowitz responded to Mr. Francone with several e-mails. In one message, Mr. Shafkowitz stated, "Frank- I am sure it was sent. I will confirm and get back to you. I did get a referral for local counsel." Id. In another e-mail, Mr. Shafkowitz confirmed that the letter was sent via UPS. See id. Mr. Shafkowitz followed up in a third message, stating, "If you don't get the letter tomorrow morning, I will sign the letter on behalf of the client and send it over." Id.

Mr. Francone did not send an e-mail to Mr. Shafkowitz expressly confirming an attorney-client relationship between the Mall and Mr. Shafkowitz. Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 11. The Mall admits that there was no express contractual attorney-client agreement between Mr. Shafkowitz and the Mall. Id. at ¶¶ 12-13.

When communicating with Emory about the lawsuit, Mr. Shafkowitz advised Emory's attorney, Scott Earle, that he represented MRF. Id. at ¶ 16. On November 16, 2012, Mr. Shafkowitz sent an e-mail to Mr. Earle regarding Emory's claims and requested an extension to respond to the lawsuit. See Pl.'s Resp. in Opp'n at Ex. 9. In the e-mail, Mr. Shafkowitz wrote, in relevant part:

> Scott- Attached is a spreadsheet showing the amounts already paid by my client with regard to work allegedly done by Emory Hill, the discrepancies from the budget amount as compared to the amounts allegedly incurred or approved and the amounts in dispute. As you will see approximately $90,000 have already been paid to subcontractors, including $20,000 to your client, of which there was no explanation of how it was applied.
>
> . . . .
>
> In the meantime, I want to confirm that you agreed to provide the appropriate extension of time to respond to the filing in this case and confirm your representation that all documents that have been filed in this matter have been provided to my office. If for some reason my understanding is incorrect in any way, please advise immediately.

<u>Id.</u> Mr. Shafkowitz also copied Mr. Francone on this November 16, 2012 e-mail.

On November 27, 2012, Mr. Shafkowitz responded to a request for an update from Mr. Francone, and stated: "Looks like [Emory is] reviewing our settlement proposal. [Scott Earle] granted the necessary extensions of time to answer. If we do not have it resolved shortly I expect to have it removed for arbitration. I will keep you posted." <u>Id.</u> On December 11, 2012, Mr. Francone sent Mr. Shafkowitz another e-mail requesting an update on the Emory lawsuit. However, Mr. Shafkowitz did not respond.

Later on December 11, 2012, Mr. Earle sent Mr. Shafkowitz an e-mail on behalf of Emory informing him that MRF's Answer to Emory's Complaint was due on or before December 31, 2012, and also noting that the Mall's time to answer the Complaint had expired. <u>See</u> <u>id.</u> at Ex. 11. Mr. Earle did not copy Mr. Francone on this e-mail and Mr. Shafkowitz did not forward it to Mr. Francone.

On January 30, 2013, Emory filed a Direction for Entry of Default Judgment against the Mall and MRF. On February 13, 2013, the Mall was notified of the default and subsequently hired legal counsel to represent it in the Emory action. On April 26, 2013, the Mall's counsel filed a Motion to Vacate Default Judgment with the Superior Court of Delaware, which the court denied on September 24, 2013. On April 15, 2014, the Supreme Court of Delaware affirmed the Opinion of the Superior Court. The Mall claims that it sustained the following damages as a result: entry of judgment in the amount of $187,884.84 in principal, $8,499.23 in post judgment interest, $69,000 in attorney's fees, and $1,114.58 in costs, totaling $266,598.65.

The Mall commenced the instant action alleging 1) legal malpractice/professional negligence against Mr. Shafkowitz and the Law Offices; 2) negligent misrepresentation against Mr. Shafkowitz; and 3) negligent supervision against the Law Offices. For the following reasons, this Court grants Defendants' Motion for Summary Judgment as to all three counts of Plaintiff's Complaint.

## STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" issue exists where there is a "sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party." Byrne v. Chester Cnty. Hosp., No. 09-889, 2012 WL 4108886, at *2 (E.D. Pa. Sept. 19, 2012) (citing Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). "A factual dispute is 'material' if it might affect the outcome of the case under governing law." Id. All factual doubts should be resolved and all reasonable inferences drawn in favor of the nonmoving party. Torretti v. Main Line Hosp., Inc., 580 F.3d 168, 172 (3d Cir. 2009) (citing DL Res., Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 216 (3d Cir. 2007)). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). "[U]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Byrne, 2012 WL 4108886, at *2. The movant is responsible for "informing the court

of the basis for its motion for summary judgment and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

**DISCUSSION**

The Mall argues that Mr. Shafkowitz and the Law Offices undertook legal representation of the Mall in the Emory action. Defendants disagree that an attorney-client relationship ever existed between Mr. Shafkowitz and the Mall.

**A.    Legal Malpractice/Professional Negligence Against Mr. Shafkowitz (Count I)**

In Count I of the Complaint, the Mall asserts a claim against Mr. Shafkowitz and the Law Offices for legal malpractice/professional negligence. To establish a claim for legal malpractice, a plaintiff must show: "(1) the employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of damage to the plaintiff." Walker v. Stern, Civ. Action No. 11-1659, 2012 WL 3731375, at *4 (E.D. Pa. Aug. 29, 2012) (citing Knopick v. Connelly, 639 F.3d 600, 606 n.7 (3d Cir. 2011)). Accordingly, an attorney-client relationship is a condition precedent of a legal malpractice action. Gov't Emples Ins. Co. v. Forbes, No. 99-881, 1999 WL 371625, at *1 (E.D. Pa. June 2, 1999). In this case, the Mall fails to satisfy the first element showing that there was an attorney-client relationship between the Mall and Mr. Shafkowitz or the Law Offices.

An attorney-client relationship arises only when the parties have expressly or impliedly consented to its formation. Comm. on Prof'l Ethics and Grievances of Virgin Islands Bar Ass'n v. Johnson, 447 F.2d 169, 174 (3d Cir. 1971). Here, the Mall concedes that it did not have an express attorney-client relationship with Mr. Shafkowitz and the Law Offices. See Pl.'s Resp. to

Defs.' Statement of Material Facts ¶¶ 11-13; see also Pl.'s Resp. in Opp'n at 1-4 (arguing only that an implied attorney-client relationship existed between the Mall and Mr. Shafkowitz). Therefore, the Mall must establish the existence of an implied attorney-client relationship. In Pennsylvania, an implied attorney-client relationship is shown when "(1) the purported client sought advice or assistance from the attorney; (2) the assistance sought was within the attorney's professional competence; (3) the attorney expressly or impliedly agreed to provide such assistance, and (4) it is reasonable for the putative client to believe that the attorney was representing him." Capitol Surgical Supplies, Inc. v. Casale, 86 Fed. App'x 506, 508 (3d Cir. 2004) (citing Atkinson v. Haug, 622 A.2d 983, 986 (1993)). "A request for legal services, and an agreement to provide legal services, are necessary elements to form an attorney-client relationship." Id. (citing Cost v. Cost, 677 A.2d 1250, 1254-55 (1996)).

   1. *The Mall did not seek advice or assistance from Mr. Shafkowitz or the Law Offices*

The Mall cannot demonstrate that an implied attorney-client relationship existed between it and Mr. Shafkowitz because it did not seek advice, assistance, or services from Mr. Shafkowitz. The Mall sent its request for the tender of the defense and indemnification letter directly to MRF. See Pl.'s Resp. in Opp'n at Ex. 4. Mr. Geonnotti signed and returned the letter to Mr. Francone. As such, MRF, not Mr. Shafkowitz, accepted the responsibility to represent the Mall. MRF's acceptance of the duty to defend and indemnify the Mall did not obligate its attorney, Mr. Shafkowitz, to also defend the Mall. Because Mr. Geonnotti also sent the letter to Mr. Shafkowitz for review, the Mall claims that an attorney-client relationship was established. However, the Mall's request for MRF's execution and return of the defense and indemnification

letter does not equate to a request for legal representation from Mr. Shafkowitz and the Law Offices.

The Mall points to e-mail exchanges between Mr. Francone and Mr. Shafkowitz as evidence that it requested legal services. Specifically, in a November 15, 2012 e-mail, Mr. Francone followed up with Mr. Shafkowitz requesting that he return the executed indemnity letter. In that e-mail, Mr. Francone writes, "The response date [for the Emory Complaint] is fast approaching and I need to make sure we do not need to hire local counsel to represent GGP and the Property." Id. at Ex. 5. Mr. Shafkowitz responded to Mr. Francone on the same day, stating that he would confirm that the indemnity letter was returned and that he received a referral for local counsel. Id. This exchange establishes that Mr. Francone knew that he may have needed to retain counsel and did not consider Mr. Shafkowitz as representing the Mall. Mr. Shafkowitz's response simply shows that he was aware of the existence of the indemnity and defense letter, as well as the fact that MRF had agreed to defend and indemnify the Mall. However, this exchange does not demonstrate that the Mall requested legal services from Mr. Shafkowitz, nor does it establish that Mr. Shafkowitz agreed to represent the Mall on behalf of MRF in the Emory action.

*2. Mr. Shafkowitz did not agree to provide the Mall with legal assistance*

Next, the Mall cannot show that Mr. Shafkowitz impliedly agreed to render legal services. The Mall points to Mr. Shafkowitz's billing records as evidence that an attorney-client relationship was established pursuant to the indemnity and defense agreement. The billing records indicate:

> Fee: 1.40 hours @ 165/hour
> TC w/**GGP counsel** mechanic lien issue; **several corresp with client re same**; TC w/Mike re same; review of indemnity letter; prepare spreadsheet of payments and discrepancies related to Emory Hill matter, forward to client for review.

Pl.'s Resp. in Opp'n at Ex. 8 (emphasis added). This billing entry does no more than demonstrate Mr. Shafkowitz's knowledge of the indemnity letter and review of same. The Mall does not argue that Mr. Shafkowitz billed it for reviewing the indemnity letter or any other services described in the billing entry. Additionally, Mr. Shafkowitz clearly distinguished between the Mall and MRF when referring to the Mall and Mr. Francone as "GGP counsel" and MRF as "client" in his notes. Accordingly, the billing records do not establish an attorney-client relationship.

The Mall contends that Mr. Shafkowitz did in fact provide it with legal advice regarding: 1) settlement negotiations with Emory; 2) an extension to file an answer to the Emory complaint; and 3) the status of arbitration proceedings. See Pl.'s Resp. in Opp'n at 8. The Mall refers to e-mail exchanges between Mr. Shafkowitz and Mr. Francone dated November 16, 2012 and November 27, 2012.

Firstly, with respect to the November 16, 2012 e-mail, Mr. Shafkowitz sent this message directly to Emory's counsel, Scott Earle, and copied Mr. Francone to that message. In that e-mail, Mr. Shafkowitz discussed the payments MRF had already submitted to Emory, the outstanding charges that MRF owed, and a request for an extension to answer the Emory complaint. See id. at Ex. 9. Mr. Shafkowitz made clear that he represented MRF only. See id. ("Scott – Attached is a spreadsheet showing the amounts already paid by **my client** with regard to work allegedly done by Emory Hill. . . ." (emphasis added).) Given the context of the November 16, 2012 e-mail, it

was clear that Mr. Shafkowitz's "client" was MRF. At no time, did Mr. Shafkowitz advise Emory that he represented any party other than MRF in the Emory lawsuit. See Aff. of Scott Earle ¶ 2. Mr. Shafkowitz provided no legal advice in his November 16, 2012 message to Mr. Earle. Instead, he sought clarification regarding MRF's debts, as well as confirmation about an extension for a court filing.

The Mall argues that subsequent e-mail exchanges between Mr. Francone and Mr. Shafkowitz dated November 27, 2012 establish that Mr. Shafkowitz provided the Mall with advice about the extension, arbitration, and the status of settlement negotiations. On November 27, 2012, Mr. Francone contacted Mr. Shafkowitz requesting an update on the progress of the Emory action. Later that day, Mr. Shafkowitz responded: "Looks like [Emory is] reviewing our settlement proposal. [Scott Earle] granted the necessary extensions of time to answer. If we do not have it resolved shortly I expect to have it removed for an arbitration. I will keep you posted." Pl.'s Resp. in Opp'n at Ex. 9. Again, this message does not provide evidence that Mr. Shafkowitz represented the Mall. Although his usage of the pronouns "our" and "we" may have been ambiguous, Mr. Francone should have understood from previous e-mail communications that Mr. Shafkowitz represented MRF only. Mr. Francone's confusion provides no basis for the Mall's contention that it reasonably believed that an attorney-client relationship existed between it and Mr. Shafkowitz. Furthermore, Mr. Shafkowitz's November 27, 2012 e-mail to Mr. Francone consists of updates about the Emory action and does not demonstrate that any legal services were rendered on behalf of the Mall.

*3. It was not reasonable for the Mall to believe that Defendants represented it*

Defendants argue that the Supreme Court of Delaware has already decided the fourth prong of the implied attorney-client relationship test concerning whether it was reasonable for the Mall to believe that Mr. Shafkowitz was its attorney in the Emory action. Accordingly, Defendants request that this Court find that the Mall is precluded from relitigating the issue. The Mall counters that the collateral estoppel doctrine does not apply in the instant matter as the Delaware state court did not consider whether an implied attorney-client relationship existed between the Mall and Mr. Shafkowitz.

The Court agrees with the Mall's interpretation of the Delaware state court's opinion in Christiana Mall, LLC v. Emory Hill & Co., 90 A.3d 1087 (Del. 2014). In that case, the Supreme Court of Delaware addressed the issue of whether the Mall's failure to file a timely answer to the Emory Complaint was due to excusable neglect. See id. at 1091. The court defined excusable neglect as "neglect which might have been the act of a reasonable [sic] prudent person under the circumstances." Id. (quoting Watson v. Simmons, C.A. No. 08C-07-030 JTV, 2009 WL 1231145, at *2 (Del. Super. Apr. 30, 2009) (quotations omitted)). The court in the Emory Hill matter was required to examine whether a satisfactory explanation had been established for the Mall's failure to answer the Emory complaint. See, e.g., Apartment Cmtys. Corp. v. Martinelli, 859 A.2d 67, 72 (Del. 2004) (holding that defaulting party must put forth a satisfactory explanation for failing to answer a complaint before the court considers either the possibility of a meritorious defense or possible prejudice to the plaintiff after entering a final judgment). That inquiry is distinct from that which this Court must complete in determining the reasonableness of the Mall's belief that Mr. Shafkowitz functioned as its attorney in the Emory action. Accordingly,

the Court will now turn to whether a genuine issue of material fact exists as to the Mall's belief that an implied attorney-client relationship existed between it and Mr. Shafkowitz.

A subjective belief regarding the formation of an attorney-client relationship is an insufficient basis upon which to find the existence of a genuine issue of material fact precluding summary judgment. Capitol Surgical Supplies, Inc. v. Casale, 86 Fed. App'x 506, 509 (3d Cir. 2004) (citing Atkinson v. Haug, 622 A.2d 983, 987-88 (Pa. 1993)). Here, attempting to support its argument, the Mall points to Mr. Francone's deposition testimony indicating his belief that Mr. Shafkowitz was the Mall's attorney. See Pl.'s Resp. in Opp'n at 11-12, 16-18; Francone Dep. 77:14-21, Mar. 2, 2015 ("My understanding is based on the letter of indemnification and defense signed by [MRF] and [Mr. Shafkowitz's] continued communication with me and updates throughout the process through November and December that he was engaged to represent Christiana Mall as well as his client."); Francone Dep. 79:4-10, 81:19-24, 82:1-14. However, Mr. Francone's testimony offers nothing more than his subjective belief about the nature of the Mall's and Mr. Shafkowitz's relationship. His statements fail to shed light on whether it was objectively reasonable for the Mall to believe that Mr. Shafkowitz was its attorney.

Given the level of sophistication and resources available to GGP and the Mall, as well as the totality of the circumstances surrounding the Emory action, the Court concludes that it was not reasonable for the Mall to believe that Mr. Shafkowitz functioned as its attorney. The Mall is owned by GGP, a Fortune 500 trust company, which owns and manages multiple shopping centers and high end retail properties. Francone Dep. 22:19-23:23, 25:8-12. GGP has a legal department, which represents the interests of all its properties, as well as a general counsel. Francone Dep. 27:3-8, 42:4-6. GGP's legal department, with which Mr. Francone was in close

contact at the time, managed thousands of mechanics liens against the company. Francone Dep. 30:11-31:19, 33:23-34:19, 47:6-15. GGP also had established practices to ensure that tenants of its shopping centers and properties, such as MRF, defended and indemnified GGP's properties in any lawsuit. Francone Dep. 51:13-22. The Court concludes that a sophisticated and experienced business entity such as the Mall could not have reasonably believed that Mr. Shafkowitz represented it or had rendered legal services in the Emory action. Moreover, the Mall has pointed to no credible evidence supporting its assertion that it sought or received legal assistance from Mr. Shafkowitz and the Law Offices in connection with the Emory action. Indeed, Mr. Shafkowitz never represented to Mr. Francone or Mr. Scott that he was the Mall's attorney. This lack of evidence undermines the Mall's purported reliance on Mr. Francone's "subjective belief" that Mr. Shafkowitz owed the Mall a duty due to a perceived attorney-client relationship. See, e.g., Cost, 677 A.2d at 1255 (concluding that plaintiff's argument that it relied upon its subjective belief that an attorney-client relationship existed was not viable since plaintiff did not seek or receive legal assistance from defendants).

The Court concludes that no question of fact exists with respect to an implied attorney-client relationship between Mr. Shafkowitz and the Mall. As such, the Court grants Defendants' motion for summary judgment as to the Mall's claim for legal malpractice/professional negligence against Mr. Shafkowitz and the Law Offices.

**B. Negligent Misrepresentation against Mr. Shafkowitz (Count II)**

Count Two of the Mall's Complaint asserts a claim for negligent misrepresentation against Mr. Shafkowitz. To prevail on a claim of negligent misrepresentation in Pennsylvania, plaintiffs must show: "(1) a misrepresentation of material fact; (2) made under circumstances in

which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." Car Sense, Inc. v. Am. Special Risk, LLC, 56 F. Supp. 3d 686, 696 (E.D. Pa. 2014) (citing Bortz v. Noon, 729 A.2d 555 (1999)). A duty owed by one party to another must also exist. See Bortz, 729 A.2d at 559.

The Mall claims that Mr. Shafkowitz, through his communications with Mr. Francone, negligently misrepresented that he 1) was representing the Mall's interest in settlement negotiations with Emory; 2) had obtained an extension of time to file an answer to the Emory complaint on behalf of the Mall; and 3) would update the Mall about the status of the action. See Pl.'s Resp. in Opp'n at 21. The Mall relies on the November 27, 2012 e-mail from Mr. Shafkowitz to Mr. Francone as support for its negligent misrepresentation claim. As discussed above, the Court recognizes the ambiguity of the pronouns used in Mr. Shafkowitz's November 27, 2012 e-mail. However, the Mall has failed to show that Mr. Shafkowitz misrepresented a material fact with respect to settlement negotiations or the extension that Emory granted MRF. Additionally, since this Court has concluded that there was no attorney-client relationship between Mr. Shafkowitz and the Mall, the Mall cannot show that Mr. Shafkowitz owed a duty to represent the Mall or to protect its interests in the Emory action. As such, the Court grants Mr. Shafkowitz's motion for summary judgment as to Count Two of the Mall's Complaint.

**C. Negligent Supervision against the Law Offices (Count III)**

In Count Three of the Complaint, the Mall asserts a claim against the Law Offices for negligent supervision. The Mall claims that the Law Offices failed to supervise Mr. Shafkowitz to assure that an answer to the Emory complaint was timely filed on behalf of the Mall. Compl. ¶

-14-

51. Additionally, the Mall alleges that the Law Offices failed to protect the Mall's interests. Id. at ¶ 52.

To prevail on a negligent supervision claim in Pennsylvania, a plaintiff must demonstrate that his loss resulted from

> (1) a failure to exercise ordinary care to prevent an intentional harm by an employee **acting outside the scope of his employment**,
> (2) that is committed on the employer's premises,
> (3) when the employer knows or has reason to know of the necessity and ability to control the employee.

Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 487-88 (3d Cir. 2013) (citing Dempsey v. Walso Bureau, Inc., 246 A.2d 418, 420 (1968); Heller v. Patwil Homes, Inc., 713 A.2d 105, 107-08 (Pa. Super. Ct. 1998)) (emphasis added).

> A claim for negligent supervision provides a remedy for injuries to third parties who would otherwise be foreclosed from recovery under the principal-agent doctrine of respondeat superior because the wrongful acts of employees in these cases are likely to be outside the scope of employment or not in furtherance of the principal's business.

Id. (quoting In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig., No. 05-3588, 2007 WL 2541216, at *29 (E.D. Pa. Aug. 29, 2007)). Accordingly, to recover on a negligent supervision claim, a plaintiff must show that the employee acted outside the scope of his employment.

Here, Mr. Shafkowitz avers that the Law Offices is a sole proprietorship operated by Mr. Shafkowitz, the sole proprietor.[2] Defs.' Answer ¶ 5; Br. in Support of Defs.' Mot. for Summ. J. at 18. As such, the Law Offices is not a distinct legal entity apart from its owner. See Borah v. Monumental Life Ins. Co., No. Civ.A. 04-3617, 2005 WL 351040, at *2 (E.D. Pa. Feb. 14,

---

[2] The Mall does not dispute this.

2005). Thus, Mr. Shafkowitz, not the Law Offices, is the employer and supervisor, and the Law Offices cannot be sued separately. See, e.g., id. (holding that sole proprietorship had no legal existence apart from its owner, could not be sued separately, and must be dismissed from the action); Glidden Co., Inc. v. Dep't of Labor and Indus., 700 A.2d 555, 558 (Pa. Commw. Ct. 1997) ("[I]n a sole proprietorship, the owner/sole proprietor *is* the employer, as he or she personally holds both the assets and liabilities of the business, including contractual rights and duties."). Moreover, in its Complaint, the Mall failed to allege that Mr. Shafkowitz acted outside the scope of his employment. See Compl. ¶ 53 ("At all times materials [sic] hereto, Attorney Shafkowitz and his staff were employees and/or agents of the Law Firm who acted negligently.") The Mall does not address these issues in its Response in Opposition to Defendants' Motion for Summary Judgment. Finally, this Court has concluded that no attorney-client relationship existed between Mr. Shafkowitz and the Mall, and, as such, Mr. Shafkowitz owed and breached no duty to the Mall. The Court grants Defendants' Motion for Summary Judgment as to Count Three of the Mall's Complaint.

## CONCLUSION

For the foregoing reasons, this Court concludes that there is no genuine dispute as to any material fact and grants summary judgment in favor of Defendants David M. Shafkowitz, Esquire and Law Offices of David M. Shafkowitz against Plaintiff Christiana Mall. Counts One to Three of Plaintiff's Complaint are dismissed. An appropriate Order follows.